UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ANTONIO CORONA, CECILIO MARTINEZ,           ECF Case
ADAN CORONA, and ALFREDO SANTOS,            Docket Number 08 CV 5399 (LAK) (KNF)

                    Plaintiffs,

-against-                                   **PLAINTIFFS' PRETRIAL
                                            MEMORANDUM OF LAW**

ADRIATIC ITALIAN RESTAURANT &
PIZZERIA, INC., KOLA CAMAJ A/K/A
NICOLA CAMAJ, GJEKA CAMAJ A/K/A
GJAK CAMAJ A/K/A JACK CAMAJ, MIKE
CAMAJ A/K/A MIRASH CAMAJ, and
PRENTAS CAMAJ A/K/A PETER CAMAJ,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## PLAINTIFFS' PRETRIAL MEMORANDUM OF LAW

Amy Carroll (AC 5640)
MAKE THE ROAD NEW YORK, INC.
301 Grove Street
Brooklyn, New York 11237
(718) 418-7690 x 1224

Lindsey Schoenfelder (LS 9830)
of counsel to Christopher D. Lamb, Esq.
MFY LEGAL SERVICES, INC.
299 Broadway, 4th Floor
New York, NY 10007
(212) 417-3756

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................... 2

ARGUMENT.............................................................................................................................. 6

    I.    **PLAINTIFFS ARE ENTITLED TO UNPAID WAGES UNDER FLSA AND NEW YORK LABOR LAW**.............................................................................................. 6

        A.    **Plaintiffs will establish their wages and hours through testimony**...................... 7

        B.    **Plaintiffs are entitled to full minimum wage and overtime compensation under FLSA and New York Labor Law.**........................................................................ 9

        C.    **Defendants may not take a meal allowance under FLSA or New York Labor Law.**.............................................................................................................. 11

        D.    **Defendants cannot credit per-delivery moneys towards the minimum wage obligation** .................................................................................................. 12

        E.    **Plaintiffs are entitled to spread-of-hours compensation** ..................................... 16

        F.    **Plaintiffs are entitled to compensation for all hours worked, including "wait" and "down" time.** ....................................................................................... 17

    II.    **PLAINTIFFS ARE ENTITLED TO COMPENSATION FOR BICYCLE EXPENSES UNDER  FLSA AND NEW YORK LABOR LAW** .............................. 19

    III.  **DEFENDANTS' VIOLATIONS OF FLSA AND NEW YORK LABOR LAW WERE WILLFUL AND WITHOUT A GOOD-FAITH BASIS** ............................... 19

        A.    **Defendants' conduct was willful**................................................................ 19

        B.    **Defendants waived their affirmative defense to avoid an award of liquidated damages under FLSA** .................................................................................. 20

        C.    **The FLSA statute of limitations dhould be equitably tolled** ............................. 21

    IV.  **PLAINTIFFS ARE ENTITLED TO INTEREST, COSTS, AND FEES** ................... 22

    V.    **ALL DEFENDANTS WERE PLAINTIFFS' EMPLOYERS AND THUS JOINTLY AND INDIVIDUALLY LIABLE FOR UNPAID WAGES**........................................ 22

CONCLUSION ........................................................................................................................ 24

## PRELIMINARY STATEMENT

Plaintiffs Antonio Corona, Cecilio Martinez, Adan Corona, and Alfredo Santos worked as delivery men and cleaning staff for Defendants at Adriatic Italian Restaurant and Pizzeria, Inc. ("Adriatic"). Though Plaintiffs worked long hours over many years, and were integral to the operation of the restaurant, Defendants, four brothers who owned and managed the restaurant, paid them substantially below the minimum wage. Adriatic and its four owners engaged in systemic, willful, and long-term violation of federal and state laws at the expense of Plaintiffs and their families.

Adriatic Italian Restaurant & Pizzeria, located on First Avenue between 18th and 19th Streets in Manhattan, is among the closest restaurants to the large group apartment buildings colloquially referred to as "Stuyvesant Town." The bulk of the restaurant's business comes from delivery orders from those towers and other residential buildings in the area, as well as deliveries to area offices, hospitals, and other businesses. The restaurant is open to the public seven days a week, from 11 a.m. until 11 p.m. In addition to deliveries, customers order pizza slices and sandwiches at a pizza counter, or sit down for table service in the restaurant's dining room.

Brothers Nicola ("Kola") Camaj, Gjak ("Jack") Camaj, Mirash ("Mike") Camaj, and Prentas ("Peter") Camaj ("Defendants" or "the Camaj brothers") first opened the restaurant in the late 1980s. The Camaj brothers kept the business under the close control of their own family, filling many of the restaurants' "front of the house" managerial and hospitality positions with their sons, daughters, and wives, or family friends who were also members of New York's Albanian-American community. The Camaj brothers managed the restaurant on a rotating schedule. At least one of the four brothers was typically at the restaurant at any given time, overseeing the restaurant's long-established daily routines. The four Camaj brothers made

decisions about managing the restaurant as a group, and each brother was involved in the daily operations of the restaurant.

The Camaj brothers filled many of the restaurant's more menial jobs by hiring members of a single extended family of Mexican-Americans. Antonio Corona began working for the restaurant around 1991, learning of the job through an uncle who already worked for Adriatic making deliveries. Antonio started working delivery shifts in the evenings, but quickly began to work lunch shifts as well and take on more tasks. He eventually assumed responsibility for many of the restaurant's "outside" operations (so-called because many of the menial workers' tasks took place outside of the restaurant, or in the basement, which is accessible only through a classic New York sidewalk hatch), including coordination of the delivery system, the basement inventory of ingredients and supplies, and the daily custodial maintenance of the restaurant's sidewalks, bathrooms, dining areas, and garbage. When the brothers needed more "delivery boys," as Defendants called the delivery workers, the brothers often turned to Antonio to find them. Antonio would suggest members of his family when vacancies arose, or refer others who had come by the restaurant looking for work. The Camaj brothers largely relied on Antonio to explain the restaurant's rules and operations to new delivery employees, and to make sure that the restaurant had enough delivery workers to cover each shift despite high turnover.

Cecilio Martinez, Antonio's uncle, began working at the restaurant around October 2003, and, in addition to making deliveries during both the lunch and dinner shifts, helped Antonio clean the restaurant and maintain the restaurant's inventory. Adan Corona, Antonio's son, began working at the restaurant in the summer of 2004, when he had just turned fifteen, as a delivery worker, custodian, and occasional dishwasher, and worked there for approximately three years. Alfredo Santos worked for the restaurant from March 2007 until December 2007 as a

delivery worker and custodian.

The workday at the restaurant was divided into a lunch and dinner shift. Plaintiffs contend that for lunch, they were required to arrive at 11:00 a.m. and work until the start of the dinner shift, at 4:00 p.m. Plaintiffs also contend that the dinner shift ran from 4:00 p.m. until they finished cleaning after the restaurant closed, usually 11:30 p.m. or later. Defendants insist that the lunch shift ran from noon to 4:00 p.m., that no delivery workers were on duty from 4:00 until 6:00 p.m., and that the dinner shift ran from 6:00 until 11:00 p.m. Notably, Defendants admit that they never maintained records of employees' hours worked or wages received as required by both federal and state law, and thus have no direct proof of any of Plaintiffs' hours. The evidence will show that Antonio Corona and Cecilio Martinez both regularly worked the lunch and dinner shifts at the restaurant, usually working 11 to 12 hours per day, six days per week. Adan Corona, who was still in high school for much of the time he worked at the restaurant, regularly worked the dinner shift after school on weekdays and both the lunch and dinner shifts on weekends, routinely working approximately 49 hours per week. Alfredo Santos worked dinner shifts only. While he started out working several shifts per week, he received fewer and fewer shifts after disagreements with the Camaj brothers; his hours ranged between a maximum of about 50 hours per week and a minimum of about 20 hours per week.

During the time period at issue in this action, Antonio Corona received fifteen dollars for each of the 12 delivery shifts he regularly worked a week, plus, starting around approximately 2000, twenty dollars "extra" per week from Defendant Jack Camaj for his oversight of the restaurant's storeroom and supply deliveries. With total "house" pay of $200 a week, Antonio Corona's effective hourly wage was about $2.90 per hour, with no overtime premium or spread of hours pay. Defendants paid Cecilio Martinez $10 per shift for 12 shifts,

for a total of $120 per week of "house" pay and an effective hourly wage of about $1.74 with no overtime premium or spread of hours pay. Adan Corona earned ten dollars per shift as a delivery worker, generally earning $80 per week for eight shifts. For a short period, he also filled in one day a week as a dishwasher, for which he was paid $70 per day. His effective wages were as low as $1.60 per hour, with no overtime premium or spread of hours pay. Alfredo Santos also received $10 dollars per shift for shifts generally lasting between six and seven hours, resulting in an effective hourly wage of approximately $1.42, with no overtime premium or spread of hours pay.

The Camaj brothers used a unique, but ultimately unlawful, system for its deliveries that generated a small extra amount of income for workers on each delivery. Before taking a cash order out for delivery, the Camaj brothers required the worker to make a "deposit" by paying the restaurant the price of the food *with money from the worker's own pocket*. The worker then kept all money paid by the customer. On the rare occasion a worker could not complete a delivery, the restaurant returned the "deposit" when the worker returned with the undelivered food. Defendants built in a small bonus of a few quarters with each delivery. Thus, for example, if an order cost $20.50, the worker usually had to pay $20 to the restaurant before taking the food out for delivery. The worker kept the full $20.50 paid by the customer (plus any tip), thus receiving a 50 cent bonus. On credit card deliveries, workers did not have to "front" the cost of the delivery to Adriatic – but were typically given an extra 50 cents when they returned to the restaurant with the signed customer receipts. Plaintiffs note that Defendant Jack Camaj, and John Camaj, son of Defendant Kola Camaj, were usually a bit more generous – charging workers less, so that workers netted a dollar or two on deliveries handled by these two. Such higher bonuses were not frequent. As explained herein, these modest per-delivery bonuses amounts do

not constitute "wages" paid by Defendants to Plaintiffs, and thus should be included in calculations of wages owed.

Defendants concede that the restaurant earned revenues in excess of $500,000 per year, with delivery business accounting for the majority of Defendants' income. Plaintiffs formed the core of the restaurant's delivery operations, but the evidence will show that the Camaj brothers' efforts to make the restaurant more profitable came at the cost of underpaying the restaurant's dishwashers and delivery workers. While Plaintiffs were able to supplement their wages with customer tips and the small "bonuses" they received for most deliveries, working at the restaurant impoverished the Plaintiffs. Tips and delivery "extras" could not make up for the fact that base wages at Adriatic were far below those mandated by law, with no overtime pay.

Through this action, Plaintiffs seek recovery from Defendants for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., and New York Labor Law, N.Y. Lab. Law § 652 (2010), and implementing regulations at N.Y. Comp. Codes R. & Regs. tit. 12, § 137 (2009) (hereinafter referred to as "N.Y.C.R.R."); statutory liquidated damages under federal and state law, 29 U.S.C. § 216, N.Y. Lab. Law § 663 (2010); attorneys' fees and costs, *id.*; and 9% prejudgment interest, N.Y. C.P.L.R. §§ 5001–5005 (2010).

## ARGUMENT

## I.  PLAINTIFFS ARE ENTITLED TO UNPAID WAGES UNDER FLSA AND NEW YORK LABOR LAW

Plaintiffs contend they are owed significant amounts in unpaid wages, and associated liquidated damages, due to Defendants' underpayment of wages throughout their employment. Determination of whether any underpayment occurred, and thus calculation of the amounts owed, depends on three interrelated findings: (1) the total hours worked by Plaintiffs on a weekly basis; (2) the total wages in fact paid by Defendants to Plaintiffs; and (3) the hourly minimum

wage and overtime pay that federal and state law required Defendants to pay.  *See, e.g.*, *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 312 (E.D.N.Y. 2009); *Yu G. Ke v. Saigon Grill, Inc.*, 595 F.Supp.2d 240, 255 (S.D.N.Y. 2008); *Heng Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. Feb 1, 2007).

Regardless of how workers are paid (by hour, shift, day or week), federal and state law look to a workers' "regular rate of pay" on an hourly basis for purposes of calculating the minimum and overtime wages due.  29 C.F.R. § 778-109; 12 N.Y.C.R.R. § 137-1.3.  The regular rate of pay is the typical rate paid for a worker's non-overtime hours each week.  The regular rate is typically calculated by totaling the worker's remuneration for the week and dividing by the total hours worked.  29 C.F.R. § 778-109; 12 N.Y.C.R.R. § 137-3.5.  Overtime premium pay, for hours in excess of 40 in a week, is calculated at 1 ½ times a worker's regular rate, when it exceeds the minimum wage, or the applicable minimum wage, when the regular rate is illegally low. 29 U.S.C. § 207; 12 N.Y.C.R.R. § 137-1.3.  These key issues are explored in detail herein.

### A.    Plaintiffs will establish their wages and hours through testimony.

Defendants admit that they failed to maintain *any* record of Plaintiffs' wages and hours, as required under both federal and state law. *See* 29 U.S.C. § 201 et seq.; 29 C.F.R. § 516.4; 12 N.Y.C.R.R. § 137-2.1. Under such circumstances, the Court is to base its calculation of wages owed on the workers' reasonable estimates of hours worked and wages received, absent *specific* rebuttal evidence by Defendant that those estimates are inaccurate. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946); *Saigon Grill*, 595 F.Supp.2d at 255; *Heng Chan*, 2007 U.S. Dist. LEXIS 7770, at *66 (record-keeping requirements are the "fundamental underpinnings" of wage and hour laws). To meet his initial burden, an employee need not produce documentary evidence but may instead base his testimony on his recollection alone.

*See, e.g., Saigon Grill*, 595 F.Supp.2d at 254-255; *Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997). Once the employee has provided reasonable estimates of the amount of work performed and compensation received, the burden shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee' evidence." *Anderson*, 328 U.S. at 668. *See also Manlapaz*, 643 F. Supp. 2d at 307 ("the burden then shifts to the employer to prove by a preponderance of the evidence that the plaintiff was properly paid for the hours worked"); *Mascol v. E & L Transport., Inc.*, 387 F.Supp.2d 87, 94 (E.D.N.Y. 2005). If the employer fails to do so, the court is to award damages to the employee based on his own testimony, even though the award may only approximate actual damages.

In this case, Defendants will be unable to refute Plaintiffs' testimony about hours worked. Defendants concede they had no method of tracking employees' hours or wage payments. Because the brothers managed the restaurant on a rotating schedule, all four Defendants have large gaps in their personal knowledge of actual hours worked. And, lacking any time-keeping system, the brothers as a group cannot realistically claim to have accurate collective knowledge in retrospect. As Defendants cannot rebut Plaintiffs' reasonable estimates of hours worked, the Court should rely on Plaintiffs' estimates of these amounts for purposes of calculating wages owed.

Plaintiffs' recollection of pay received should also form the basis of the Court's calculation of unpaid wages. While the parties generally agree about Plaintiffs' *shift* pay, they disagree about the amount of any per-delivery bonuses Plaintiffs received. As discussed in more detail below, the per-delivery bonuses Plaintiffs received do not in fact constitute "wages" paid by Adriatic, and thus should not be included in the amount of wages Adriatic already paid

Plaintiffs.  *See infra* Point D.  However, should the Court decide to credit these bonuses towards Defendants' minimum wage obligation, Defendants cannot offer adequate rebuttal evidence about the bonuses retained by Plaintiffs, as they varied based on the person in charge of deliveries, the day, and – it seems – the mood of the brother in charge.  Thus, again, Plaintiffs' estimates of these amounts should be accepted, if the Court concludes those amounts do in fact constitute wages.

> **B.**    **Plaintiffs are entitled to full minimum wage and overtime compensation under FLSA and New York Labor Law.**

The evidence at trial will demonstrate that throughout Plaintiffs' employment, Defendants were required to pay the *full* minimum wage rate and overtime pay, not the lower "tipped" minimum wage sometimes permitted under federal and state law.  When certain strict prerequisites are met, both federal and state law allow employers of tipped workers to credit a defined portion of tips received by the worker against the employer's minimum wage obligation, and thereby lower the portion of the minimum wage that the employer must pay directly to the worker.  29 U.S.C. § 203(m); 12 N.Y.C.R.R. § 137-1.4.  In essence, the "tip credit" allows an employer to pay its workers a lower "tipped" minimum wage rate.

Under FLSA, an employer can take the tip credit *only* when an employer (1) provides the employee pre-employment *notice* of its intent to do so and (2) allows the employee to keep all tips received from customers. 29 U.S.C. § 203(m).  These modest prerequisites "are strictly construed," and an employer will owe the full minimum wage, even when its employees earned significant tips, where an employer fails to comply with *both* requirements.  *See e.g., Saigon Grill*, 595 F.Supp.2d at 254; *Chu Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002) (citing *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 404 (3d Cir. 1994); *Martin v. Tango's Restaurant, Inc.*, 969 F.2d 1319, 1323 (1st Cir. 1992)). It is the employer's burden to

demonstrate entitlement to claim the tip credit, not the employee's burden to disprove it. *See Heng Chan*, 2007 U.S. Dist. LEXIS 7770, at*52.

While the statute does not define what constitutes adequate "notice," case law makes clear that Adriatic in no way met this threshold burden. At a minimum, an employer "must first notify the employees of the requirements of the law regarding minimum wages and of the employer's intention to take the tip credit, that is, to include tip income when calculating wages actually paid for minimum-wage purposes." *Saigon Grill*, 595 F.Supp.2d at 254. *See also Heng Chan*, 2007 U.S. Dist. LEXIS 7770, at *23 (noting that an English-language posting explaining FLSA is likely not sufficient notice for purposes of claiming the tip credit); *Tango's Restaurant, Inc.*, 969 F.2d at 1322; *Kilgore v. Outback Steakhouse*, 160 F.3d 294, 298 (6th Cir. 1998); *Chez Robert*, 28 F.3d at 404 ("When the employer has not notified employees that their wages are being reduced pursuant to the Act's tip-credit provision, the district court may not equitably reduce liability for back wages to account for tips actually received.").

Defendants provided no notice of the tip credit to Plaintiffs at their time of hire or at any point during their employment. Defendants themselves emphasize that Adriatic usually relied on Antonio Corona to recruit, orient, and train new employees at Adriatic, including explaining the pay system. And as Antonio Corona himself will show, he lacked any understanding of his right to the minimum wage, much less an understanding of the "tip credit" under FLSA. Thus, by relying on Antonio Corona to orient new employees, Adriatic could not possibly have met its burden to provide meaningful notice to Plaintiffs of its intent to take the tip credit under FLSA. Defendants are therefore barred from retroactively claiming the tip credit under FLSA and owe Plaintiffs the full minimum wage and overtime premium pay for all hours worked. *See Tango's*

*Restaurant, Inc.*, 969 F.2d at 1323 ("If the penalty for omitting notice appears harsh, it is also

true that notice is not difficult for the employer to provide.").

New York law likewise sets strict prerequisites for an employer seeking to benefit from

the tip "allowance," as it is termed under state law. In order to claim the tip allowance, state law

requires employers to provide employees with a *weekly* statement that lists wages and any

allowances claimed as part of the minimum wage. 12 N.Y.C.R.R. § 137-2.2.  State law also

requires that employers maintain detailed weekly payroll records for six years which show

allowances claimed towards minimum wage. 12 N.Y.C.R.R. § 137-2.1. If employers fail to

comply with either the weekly record-keeping and wage statement requirements, they cannot

claim the state tip allowance. *See Manlapaz,* 643 F. Supp. 2d at 309-310.  Defendants concede

they kept no such payroll records and that they never provided Plaintiffs with a weekly stub

indicating the worker's pay or allowances claimed.  Thus, Defendants are likewise barred from

retroactively claiming the tip allowance under New York law.

### C.  Defendants may not take a meal allowance under FLSA or New York Labor Law.

Defendants seek to lower their overall liability by taking credit for the value of free meals

they allege they provided Plaintiffs.  Plaintiffs contend that they in fact received many fewer

meals from Adriatic than Defendants claim.  But regardless of the actual number of free meals

given Plaintiffs, Defendants cannot take credit for meals under either FLSA or New York law

because Defendants did not comply with the record-keeping requirements imposed by both.

FLSA allows an employer to pay a portion of an employee's minimum wage in the form

of a non-cash benefit, such as meals. *See*, 29 U.S.C. § 203(m). This allowance is limited to the

meals' "reasonable cost," namely "not more than the actual cost to the employer" not including a

profit.  29 C.F.R. § 531.3. An employer claiming such a credit must preserve detailed records of

the actual cost of any meal provided.  29 C.F.R. § 516.27(a).  It is a well-settled point of law that

failure to maintain such records prevents an employer from counting the value of free meals in

fact provided to the employees.  *See, e.g.*, *Saigon Grill*, 595 F.Supp.2d at 256-257; *Herman v.*

*Collis Foods, Inc.*, 176 F.3d 912, 920 (6th Cir. 1999).  "'An employer's unsubstantiated estimate

of his cost, where the employer has failed to comply with the record-keeping provisions of

FLSA,' does not satisfy this burden of proof." *Herman,* 176 F.3d at 920 (quoting *Donovan v.*

*New Floridian Hotel, Inc.*, 676 F.2d 468, 475 (11th Cir. 1982)).  Defendants concede that they

kept *no* records of meals they allege they provided Plaintiffs.  Thus, Defendants are not

permitted to credit meals against their obligation to pay the full minimum wage under FLSA.

New York law permits a limited meal allowance, ranging from $1.65 per meal in 2000 to

$2.10 per meal in 2008.  12 N.Y.C.R.R. § 137-1.9. However, to claim a meal allowance, an

employer must maintain records, provide employees a weekly wage statement reflecting the

meal allowances taken, and ensure that the free meals includes food from several delineated food

groups. 12 N.Y.C.R.R. §§ 137-2.1, 137-2.2, 137-3.8.  Failure to meet these requirements

precludes retroactive claims of meal allowances. *See Manlapaz,* 643 F. Supp. 2d at 310. It is

undisputed that defendants maintained no such records and provided no such wage statements.

Thus, they cannot claim the New York meal allowance against their minimum wage obligations.

### D.    Defendants cannot credit per-delivery moneys towards the minimum wage obligation.

As noted in the Preliminary Statement, Defendants used a unique, but ultimately illegal,

"deposit" system to deliver orders to customers.  For cash orders, Defendants demanded that

each delivery worker make a "deposit" to the restaurant from his own money before taking an

order out for delivery – essentially making the worker *pay* for the opportunity to work.

Defendants built a small bonus for the worker into this mandatory deposit system, though the

12

bonus usually came in the form of reimbursement from the customer rather than direct payment from the restaurant. Typically workers were allowed to pay 50 cents less than the full price of the order and then pocket that extra money upon collecting payment from the customer. At times, when a more generous manager handled these deposits, the worker kept a larger bonus.[1] On the rare occasion that a worker could not make the delivery, Adriatic returned the deposit to the worker when the worker came back with the undelivered food. Defendants contend that the small "bonuses" built in to this deposit system count as "wages" paid to Plaintiffs. However, as explained below, due to the fundamentally illegal nature of this scheme, these small bonuses should not count as "wages" and should be excluded from calculation of wages owed.

First, as explored in detail above, federal and state law place modest but strict burdens on employers to keep records of payments to workers and to explain, record, and have proof of any payments for which employers seek to take credit. *See, e.g.,* 29 C.F.R. § 516.27(a) (meal credit allowed only when employer maintains records of actual cost of meals provided); 29 C.F.R. § 516.28 (detailed record-keeping requirements for employers claiming tip credit); 12 N.Y.C.R.R. §§ 137-2.1, 2.2 (detailed record-keeping requirements to claim state tip allowance). In a word, wage and hour laws demand that wage payment systems be *transparent*. Such requirements protect against abuse and fraud by employers, allow employees to verify proper payment, and permit government inspectors to conduct meaningful audits of employer practices. *See, e.g., Heng Chan* 2007 U.S. Dist. LEXIS 7770, at *66 (record-keeping requirements are the "fundamental underpinnings" of the wage laws) (internal quotation marks omitted); *Moon v. Kwon*, 248 F.Supp.2d 201, 218 (S.D.N.Y. 2002) ("[f]ailure to keep accurate records can obscure

---

[1] On credit card deliveries, workers did not have to "front" the cost of the order to the restaurant before delivering the food. They still typically received a 50 cent bonus directly from Adriatic when they returned to the restaurant with the signed customer receipt. For the reasons explored herein, those bonus amounts should likewise be excluded from the "wages" Defendants already paid Plaintiffs.

a multitude of minimum wage and overtime violations") (internal quotation marks omitted);

*Wirtz v. Mississippi Publishers' Corp.*, 364 F.2d 603, 607 (5th Cir. 1966) ("only by relying on

employers' records can the Secretary of Labor with his limited facilities hope to be able to

enforce the substantive provisions").

     In this instance, there was *no* formalization of the deposit system: no explanation by

Defendants of the mechanics or purpose of the rule, no notice by Defendants that they intended

to credit such delivery-bonuses as part of the minimum wage, no guarantee of a particular

amount of "bonus,"[2] and no record-keeping of deposits paid by Plaintiffs or bonuses retained by

them.  Notably, in their affidavits, Defendants can provide only wide-ranging estimates of both

the number of deliveries made by a worker each night and of the per-delivery bonus amounts,

preventing any conclusion as to the actual amounts retained. *See, e.g.*, Affidavit of Kola Camaj at

¶ 134.  It is precisely that lack of clarity, records, or transparency that, in other instances,

prevents employers from taking credit for things of value conferred on workers, such as tips from

customers or free meals provided by the employer.  *See supra*, Points B and C.  These facts alone

caution against allowing Defendants to retroactively take wage-credit for delivery bonuses

retained by Plaintiffs.

     Furthermore, each pre-delivery "deposit" demanded by Defendants constitutes a separate

violation of anti-kickback, anti-deduction provisions of both federal and state law.  *See* 29

C.F.R. § 531.35 (requiring wage payments be "free and clear," and prohibiting an employee

from being forced to give "directly or indirectly to the employer or to another person for the

employer's benefit the whole or part of the wage delivered to the employee"); N.Y. Lab. L. §

_____

[2] Indeed, it is far from clear that Plaintiffs possessed an enforceable right to claim any particular bonus amount for
deliveries.  This too mitigates against considering these "bonuses" as "wages."  *See, generally*, 29 U.S.C. §
207(b)(3)(e), (h) (Excluding certain discretionary bonuses from calculation of minimum wages or regular rate);
*Guiry v. Goldman Sachs*, 31 A.D.3d 70 (N.Y. App Div., 1st Dept., 2006) (incentive pay promised but not vested
does not constitute "wages" under New York Labor Law).

198-b (employer cannot "request, demand, or receive, either before or after such employee is engaged, a return, donation or contribution of any part or all of said employee's wages, salary, supplements, or other thing of value, upon the statement, representation, or understanding that failure to comply with such request or demand will prevent such employee from procuring or retaining employment."); N.Y. Lab. L. § 193 (deductions of any amounts from wages earned allowed only when deductions *benefit* employee and are *authorized in writing*).

Defendants will surely ask, however, what the "harm" was of this deposit system. The parties agree that the *financial* harm of the kick-backs was "cured" in short order, when the worker received payment from the customer and the small bonus. On the rare occasion that a worker returned with the food, unable to make the delivery, Adriatic returned the worker's "deposit." These facts, however, do not cure the damage or underlying illegality of a system that (however briefly) places costs on the worker that are to be borne solely by the employer. Requiring a pre-delivery "deposit," and the promise of a small "bonus" upon delivery – without explaining or documenting the connection of such bonuses to the minimum wage obligation – muddies the worker's status as an "employee," and even suggests the worker was in fact an "entrepreneur," "profiting" from this scheme. Indeed, Defendants at times have attempted to characterize their delivery workers as independent contractors outside the protections of the wage and hour laws. *See, e.g.*, Defendants' Answer at ¶ 92; Affidavit of Kola Camaj at ¶¶ 24-27. While such a position is untenable, as both a factual and legal matter, Defendants' mandatory deposit system reinforced the implicit message that the delivery workers were fundamentally different than other Adriatic employees, such as the waitresses or kitchen staff, when such was not the case. *See, e.g., Ansoumana v. Gristedes Operating Corp.*, 255 F.Supp.2d 184, 190-192 (S.D.N.Y 2003) (delivery workers for drugstore were employees not independent

contractors). The resulting potential for confusion as to the status of Adriatic's delivery workers as "employees," or their right to minimum wage payments, due to the deposit/kick-back scheme is a "harm" that underlies courts' condemnation of employer such employer conduct. *See, e.g.*, *East Coast Indus. Inc. v. Becconsall,* 301 N.Y.S. 3d 778 (N.Y. Civ. Ct. 1969) (labor laws extend special protections to employees, who, unlike "entrepreneurs" with access to long-term profits, depend solely on weekly pay).

It may appear unfair to prevent Defendants from now taking "credit" for bonuses that Plaintiffs in fact retained, if a reasonable estimate of the total weekly bonuses could in fact be reached. However, the law responds with seemingly harsh results where employers fail to maintain records or to take basic precautions to ensure that their payment systems meet minimum wage requirements. Indeed, even seemingly "technical" violations of state and federal law by employers can result in serious consequences, including exclusion from "wages" money or items of value the worker in fact in fact received. *See, e.g.*, *Tango's Restaurant, Inc.*, 969 F.2d at 1323 (Denying defendant the tip credit where employees admittedly earned significant tips and noting that, "[i]f the penalty for omitting notice appears harsh, it is also true that notice is not difficult for the employer to provide.").

For these reasons, Defendants should not be permitted to retroactively take credit as "wages" of any extra monies Plaintiffs retained from making deliveries under Defendants' illegal deposit system.

### E.    Plaintiffs are entitled to spread-of-hours compensation.

New York Labor Law provides that for each day a restaurant employee's "spread of hours" is longer than ten hours, the employee shall receive an additional "hour's pay at the basic minimum hourly wage rate." 12 N.Y.C.R.R. § 137-1.7 (same for tipped and nontipped workers).

16

"Spread of hours" is defined as the number of hours from the time an employee starts his

workday until the time the employee finishes his workday, regardless of how many or how long

he has breaks in the interim (e.g., lunch breaks or off-time between split shifts).  *See* 12

N.Y.C.R.R. § 137-3.11; *Dong v. CCW Fashion Inc.*, 06 Civ. 4973, 2009 U.S. Dist. LEXIS

33194, at *10 (S.D.N.Y. Feb. 19, 2009); *Heng Chan*, 2007 U.S. Dist. LEXIS 7770, at *59-60. In

this case, Defendants do not appear to contest that they never paid Plaintiffs spread-of-hours

wages for days they worked more than ten hours.  Thus, Plaintiffs Antonio Corona, Cecilio

Martinez, and Adan Corona are entitled to spread-of-hours compensation for each day they

worked both the lunch and dinner shifts at Adriatic.

> ### F.    Plaintiffs are entitled to compensation for all hours worked, including "wait" and "down" time.

Defendants contend that a portion of Plaintiffs' days, especially for Antonio Corona and

Cecilio Martinez, was not spent "working" and thus need not be compensated.  However, federal

and state law make clear that compensable work time includes time spent waiting between

deliveries or at the end of the night to start cleaning, meals of less than 30 uninterrupted minutes,

breaks of less than 20 uninterrupted minutes, and other time on-call.

FLSA and New York Labor Law require employers to compensate employees for all

work "suffered or permitted."  *See* 29 U.S.C. § 203(g); N.Y. Lab. Law § 2(7); *Moon*, 248 F.

Supp. 2d at 228 ("work that is not requested by an employer, but is nevertheless suffered or

permitted, is compensable time" under both state and federal law) (internal quotation marks

omitted). *See*, 29 C.F.R. § 785.11-13; *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d Cir.

2008). An employer "cannot sit back and accept the benefits without compensating for them."

*Keun Jai Moon*, 248 F. Supp. 2d at 228 (quoting 29 C.F.R. § 785.13).

Additionally, where an employer requires employees to wait on hand, such "waiting

time" is also compensable. *See*, *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944)

("Readiness to serve may be hired, quite as much as service itself…"); *Jiao v. Chen*, 2007 U.S.

Dist. LEXIS 96480 at *37-38 (S.D.N.Y. Mar. 30, 2007). An employee is off duty, and therefore

not entitled to compensation, only when he is "completely relieved from duty" for a period "long

enough to enable him to use the time effectively for his own purposes," and must be "definitely

told in advance that he may leave the job and that he will not have to commence work until a

definitely specified hour has arrived." 29 C.F.R. § 785.16(a). Employees who are not completely

relieved from duty during "breaks" are entitled to compensation even during mealtimes and other

"rest" periods. *See Reich v. S. New Eng. Telecomm'cns Corp.*, 121 F.3d 58, 65 (2d Cir. 1997).

    Plaintiffs Antonio Corona and Cecilio Martinez agree that in the late afternoon, work was

slower at Adriatic and that they were able to sit and eat quick meals.  However, these "breaks"

were brief and unreliable, were essentially spent on-call, and were typically interrupted with

work duties.  It was far from routine for any Plaintiff to enjoy 30 uninterrupted minutes for meals

or 20 uninterrupted minutes for breaks.  *See* 29 C.F.R. §§ 785.18, 19; *see Reich v. S. New Eng.*

*Telecomm'cns Corp.*, 121 F.3d 58, 65 (2d Cir. 1997). All Plaintiffs spent slow periods, such as

the mid-afternoon or late evening, engaged in other worker for the restaurant, such as stocking,

cleaning, or making pizza boxes.  This time also counts as compensable work time.  Under these

circumstances, and in the absence of any detailed records regarding breaks, only a modest

amount of time, if any at all, should be deducted from the weekly total hours of Plaintiffs

Antonio Corona and Cecilio Martinez, and essentially no time should be deducted from the total

hours of Adan Corona or Alfredo Santos.

## II.    PLAINTIFFS ARE ENTITLED TO COMPENSATION FOR BICYCLE EXPENSES UNDER FLSA AND NEW YORK LABOR LAW

FLSA and New York law require employers to pay for the purchase and maintenance of necessary tools of the trade, such as bicycles required for use making deliveries. *See* 29 C.F.R. § 531.35 (employer must pay for tools of trade to extent that cost borne by employee cuts in to employee's minimum wage); 29 C.F.R. § 531.3(d)(2), § 531.32(c); 12 N.Y.C.R.R. § 137-2.5(b); *Saigon Grill*, 595 F. Supp. 2d at 257.  Defendants required all delivery workers to use bicycles to make deliveries, and Plaintiffs will testify credibly that they bore the cost of purchasing and maintaining bicycles used in the course of their delivery work for Adriatic. Defendants therefore must reimburse Plaintiffs for the estimated costs Plaintiffs incurred.

## III.    DEFENDANTS' VIOLATIONS OF FLSA AND NEW YORK LABOR LAW WERE WILLFUL AND WITHOUT A GOOD-FAITH BASIS

Plaintiffs recovery in this case will be enhanced because Defendants' violations of federal and state law were willful and without a good-faith basis.

### A.    Defendants' conduct was willful.

Where an employer's violations are willful, the FLSA statute of limitations is three years rather than two.[3] 29 U.S.C. § 255(a). Furthermore, employers are required to pay 25% liquidated damages on wages owed under New York law for willful state law violations. N.Y. Lab. Law §198(1), 663(1) (25% liquidated damages for willful violations); *Keun-Jai Moon,* 248 F. Supp. 2d at 235 (state law follows the federal test on "willfulness" for the purposes of assessing liquidated damages).

The Supreme Court has held that a willful violation is one where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute*." McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). *See also Herman v. RSR*

---

[3] New York law provides a six-year statute of limitations in all cases for unpaid wages. N.Y. Lab. Law § 663(3).

*Sec. Servs., Ltd.*, 172 F.3d 132, 141-42 (2d Cir. 1999) (ignorance can be tantamount to reckless

disregard). That standard is easily met in this case.  While each defendant contends he knew of

the rules under federal and state minimum wage laws, Defendants did nothing to ensure that they

in fact complied with those dictates. That Defendants would own and manage a mid-sized

restaurant for decades without attempting the slightest gesture to comply with FLSA or New

York Labor Laws demonstrates, at the very least, "reckless disregard" tantamount to willfulness.

Courts have not hesitated to make such a finding in similar cases. *See, e.g., Saigon Grill*, 595 F.

Supp. 2d at 258 (Finding that when restaurant owners were aware of minimum wage and

overtime regulations, the decision to ignore such laws "plainly reflects willfulness").

### B. Defendants waived their affirmative defense to avoid an award of liquidated damages under FLSA.

Furthermore, Defendants will be required to pay 100% liquidated damages on top of

wages owed under FLSA because Defendants will be unable to prove the required affirmative

defense that they possessed a good-faith basis and a reasonable belief that their conduct complied

with FLSA.  *See* 29 U.S.C. § 216(b) (100% liquidated damages); *S. New Eng. Telecomm'cns*

*Corp.*, 121 F.3d at 71 ("The employer bears the burden of establishing, by plain and substantial

evidence, subjective good faith and objective reasonableness…the burden, under 29 U.S.C. §

260, is a difficult one to meet, however, and 'double damages are the norm, single damages the

exception."); *Brock v. Wilamosky*, 833 F.2d 11, 20 (2d Cir. 1987) ("The Act does not authorize

the court to decline to award liquidated damages, in whole or in part, unless the employer has

established its good-faith, reasonable-basis defense"); *Tlocoapa v. Carregal*, 386 F. Supp. 2d

362, 368 (S.D.N.Y. 2005).

Because FLSA liquidated damages are considered compensatory, while New York Labor

Law damages are more punitive in nature, employees are entitled to recover both concurrently.

*See Saigon Grill*, 595 F. Supp. 2d at 261 (ordering defendants to pay both federal and state liquidated damages, "since they also serve fundamentally different purposes."); *Do Yea Kim v. 167 Nail Plaza*, 05 Civ. 8560, 2008 U.S. Dist. LEXIS 52004 at *7-10 (S.D.N.Y. July 7, 2008).

**C.    The FLSA statute of limitations should be equitably tolled.**

The doctrine of equitable tolling "allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. N.Y. 1996). The Second Circuit recently reaffirmed that equitable tolling may be appropriate where the defendant has violated a regulation requiring it to inform the plaintiff of his rights, not simply when a defendant actively conceals critical facts. *See Valdez v. United States*, 518 F.3d. 173, 182-83 (2d Cir. 2008) (internal citations omitted).

Under FLSA, employers are required to "post and keep posted a notice explaining the Act… in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy," and the notice must lists the minimum wage and the anti-retaliation provisions, and, if applicable, the tip-credit provision. 29 U.S.C. § 203(m); 29 C.F.R. § 516.4.  When employers fail to comply with this posting and notice requirement, they frustrate employees' knowledge and exercise of their rights, and the doctrine of equitable tolling should be invoked. *See Saigon Grill*, 595 F. Supp. 2d at 261 (Tolling the FLSA statute of limitations because "had the deliverymen known of their right to a minimum… they might well have demanded higher wages, thus challenging the economic foundations of… [an] enterprise that was able to pay rock-bottom wages."); *Ramirez v. CSJ & Co.*, No. 06 Civ. 13677, 2007 U.S. Dist. LEXIS 28901at *7 (S.D.N.Y. Apr. 3, 2007) ("the ability of most [low-wage immigrant workers] to learn of their legal rights…is not great. Thus, employers that fail to post the required

notices take advantage of the defenseless in a very real way…they frustrate the legislative objective of protecting those most in need of protection.").

In this case, Plaintiffs will testify that they never observed any such FLSA posting in the restaurant, and Plaintiffs Antonio Corona, Cecilio Martinez, and Adan Corona will testify that they remained ignorant of their wage and overtime rights until meeting Alfredo Santos.  As FLSA makes it clear that it is Defendants' responsibility to post and notify all employees of their rights, the FLSA statute of limitations should be equitably tolled for Plaintiffs Antonio Corona, Cecilio Martinez and Adan Corona.

## IV.    PLANTIFFS ARE ENTITLED TO INTEREST, COSTS, AND FEES

New York law provides for 9% prejudgment interest on unpaid wages. N.Y. C.P.L.R. §§ 5001, 5004.  Courts may award interest in addition to any damages. *See Reilly v. Natwest Mkts. Group Inc.*, 181 F.3d 253, 265 (2d Cir. 1999).  Federal and state law also provides that Defendants pay the reasonable attorneys' fees and costs incurred by Plaintiffs to enforce their rights. 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a), § 663(1).  Plaintiffs respectfully request the opportunity to submit attestations as to costs and fees at the close of trial.

## V.    ALL DEFENDANTS WERE PLAINTIFFS' EMPLOYERS AND THUS JOINTLY AND INDIVIDUALLY LIABLE FOR UNPAID WAGES

Pursuant to FLSA and New York Labor Law, both corporate defendants as well as individuals who meet the definition of "employer" are personally and directly liable for wage and hour violations. *See Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 192 (S.D.N.Y. 2003).  FLSA defines an "employer" as "any person acting directly or indirectly in the interests of an employer in relation to an employee." 29 U.S.C. § 203(d).  More than one person may be an employer, and employers may have "shared or delegated operation control to other[s]… or exercised that control infrequently." *Keun-Jai Moon*, 248 F. Supp. 2d at 237. New

York Labor Law likewise broadly construes who may be considered an employer for purposes of liability, and employs the same "economic reality" test used under FLSA. *See, e.g.*, *Jiao*, 2007 U.S. Dist. LEXIS 96480 at *9, n.12 ("[C]ourts have interpreted the definition of 'employer' under New York Labor Law coextensively with the definition used by the FLSA.").

The "economic reality" test for determining who constitutes an "employer" looks at such factors such as whether the defendant ha the power over the hiring and firing the employees, supervises or controls employee work schedules or conditions of employment, determine the rate and method of payment, or maintains employment records. *RSR Sec. Servs. Ltd.*, 172 F.3d at 139. No one factor in such a test is dipositive, and the Second Circuit cautions that "mechanical application of the test is to be avoided." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988). Owners with a degree of operational control over the business, even if not over a particular worker, meet the employer test and are personally liable for all unpaid wages. *See Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983) ("The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer, along with the corporation."); *Gayle v. Harry's Nurses Registry, Inc.*, 2009 U.S. Dist. LEXIS 17768 (E.D.N.Y. Mar. 9, 2009) (finding that CEO of corporation exercised control over operations and was individually liable); *Heng Chan*, 2007 U.S. Dist. LEXIS 7770, at *34.

Defendants concede that all four brothers are joint owners of Adriatic, and that each rotated responsibility for direct supervision, management, and operation of the restaurant during the course of Plaintiffs' employment. Indeed, each brother was at times directly and solely responsible for a key aspect of Plaintiffs' jobs, namely the pre-delivery payment transaction and instructions to deliver food. Each individual defendant therefore meets the definition of "employer" under FLSA and state law and is personally liable for the full amount of wages owed

to each Plaintiff.

## CONCLUSION

The authorities cited above, together with the evidence to be offered at trial, demonstrate that Plaintiffs will prevail on their claims for substantial amounts of unpaid wages, damages, costs, fees and interest against Defendants. Plaintiffs respectfully ask for the opportunity to submit additional papers after trial, including a computation of damages to be assessed.


Dated:  Brooklyn, NY
       January 11, 2010

                                    Respectfully submitted,

                                      MAKE THE ROAD NEW YORK, INC.
                                      *Attorneys for Plaintiffs*

By:                 /s/

                                      Amy Carroll (AC 5640)
                                      301 Grove Street
                                      Brooklyn, NY 11237
                                      (718) 418-7690 x1224
                                      Amy.Carroll@maketheroadny.org

                                      Lindsey Schoenfelder (LS 9830), of counsel
                                      Christopher D. Lamb, Esq.
                                        MFY LEGAL SERVICES, INC.
                                      299 Broadway, 4th Floor
                                      New York, NY 10007
                                      (212) 417-3756